The judgment of the trial court is affirmed, with costs.

SAL TOMEI, PLAINTIFF-APPELLANT, v. RALPH ANNETTA AND THE NEW JERSEY REAL ESTATE COMMISSION, DEFENDANT-APPELLEES.

Superior Court of New Jersey
Appellate Division

Argued January 15, 1951—Decided January 30, 1951.

Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.

*Mr. Virgil J. Lanni* argued the cause for appellant.

*Mr. Joseph A. Murphy,* Assistant Deputy Attorney General, argued the cause for the appellees (*Mr. Theodore D. Parsons,* Attorney General, and *Mr. John Warhol, Jr.,* Deputy Attorney General).

The opinion of the court was delivered by

JAYNE, J. A. D. The narrative of the factual events underlying the subject matter of the present appeal can be summarized. The appellant was a tenant who was obliged by

a final judgment of the Hudson County District Court to vacate the demised premises no later than April 1, 1950. The appellant discovered that on January 9, 1950, one Ralph Annetta, a duly licensed real estate broker of New Jersey with offices in the City of Bayonne, had caused the publication in the *Bayonne Times,* a newspaper printed in that city, of an advertisement soliciting prospective purchasers of the demised premises. Assuming therefrom that the broker had been authorized to expose the property for sale by his landlord, the appellant thereupon made application to the Housing Expediter for a revocation of the "certificate relating to eviction" which had been theretofore issued and which constituted a prerequisite to the institution of the eviction proceedings. In the ensuing inquiry before the Housing Expediter the landlord filed an affidavit in which he denied that he had conferred any authority whatever upon the broker to negotiate a sale of the premises and to cause the publication of the advertisement.

In that singular state of affairs, the attorney of the appellant dispatched a letter to the broker, of which the following is a copy:

"March 4, 1950.

Ralph Annetta, Real Estate Broker
105 West 4th St.
Bayonne, N. J.
Dear Sir:

I have in my possession an affidavit made by John Muzzillo, owner of property at 113 West 22nd Street, Bayonne, N. J. paragraph 6 of which states as follows:

'Landlord denies that he ever spoke to Ralph Annetta of 105 West 4th Street, Bayonne, New Jersey concerning the sale of these premises or that he ever authorized him orally or in writing in his hands for the purpose of selling the premises; landlord further denies that he ever authorized the said Ralph Annetta or any other person to insert in "The Bayonne Times," a local newspaper, or authorized any person to advertise the said premises for sale.'

If you dispute the contents of the affidavit which imputes that you advertised a house for sale without authorization, I will draw up a replying affidavit for you. If you are contended (*sic*) to allow the accusation in said affidavit to stand, then my client will have no other

recourse but to bring this matter to the attention of the Real Estate Board of the State of New Jersey for investigation.

Yours truly,

(Signed) VIRGIL J. LANNI."

The broker evidently chose to accept the latter alternative expressed in the letter. On April 7, 1950, the appellant filed a written verified complaint with the Real Estate Commission in which he related the aforementioned occurrences and charged:

"6. That the said Ralph Annetta misrepresented that he had authorization to sell the house and property in violation of Rev. Statutes as amended by *Laws of* 1948, *c.* 155, and being *subsection* (a) of said act.

7. That said Ralph Annetta, if in fact he did have authority to sell, then he was guilty of violating *subsection* (e) of said act because of bad faith and dishonesty in refusing to prove and defend his authorization by the refusal to sign a rebuttal affidavit."

The Commission subsequently designated July 26, 1950, for the hearing of the complaint upon notice to the appellant and to the accused broker.

Our information relating to the latitude of the hearing is derived from the following transcription of the minutes:

"Commissioner Walker: Proceed.

Henry A. Boesch, witness called on behalf of complainant, being first duly sworn, testified as follows:

Direct Examination by Mr. Lanni:

Q. Are you connected with the Hudson County District Court?

Commissioner Walker: Just a minute. Suppose you make a brief statement of your complaint.

\* \* \* \* \* \* \*

Commissioner Walker: You are charging principally that the agent did not have an authorization to sell?

Mr. Lanni: That's right.

Commissioner Walker: My feeling is that the matter has been disposed of. Here is a signed authorization that the broker did have, calling for six months, and that it was repudiated by somebody— whether verbally or in writing it is neither here nor there—and the question in my mind is just whether a broker on an order from some tenant is compelled to disclose whether he has an authorization or not. This is very unusual all the way through. We cannot see any substance to the complaint and think it has already been disposed of in the courts and O. P. A. There is only one thing that would appear

to me to be before us and that is the fact that this tenant is bringing pressure on this broker and wants him punished. The matter has been disposed of and no harm has been done to the tenant. In view of that, it seems pretty far-fetched under the circumstances.

\* \* \* \* \* \* \*

(Commissioner-President Samuel D. Walker conferred with the Commissioners present.)

Commissioner Walker: It is the unanimous vote of the Commissioners present that the complaint be dismissed. The Commission is not at all inclined to follow up cases, or adjudicate cases or complaints, that have already been settled by trial or other agencies apart from the O. P. A. Consequently, on the face of it we know of no rules or regulations within this Commission that admits that on the application of the tenant that a broker should disclose whether he has listings or whether he does not have listings. Therefore in the general substance of your complaint, from its inception, we cannot see anything to it. We find that the tenant in this case has not been harmed, and we are going to dismiss the case.

Mr. Lanni: On the record I desire to file my objections to the ruling and base my objection on the case of *Hogg v. Real Estate Commissioner*, 129 *Pacific* 2d, *page* 709, and the California case, 54 *Cal. App.* 2, *page* 712, having a statute similar to that in New Jersey, in which the court held the definition of dishonesty, but where the dishonesty as is used in the section of the real estate act, enumerating the grounds on which the Real Estate Commission may suspend or revoke a broker's license, 'denotes an absence of integrity, a disposition to cheat.' The complainant takes the attitude that this real estate broker knew that the complainant required his affidavit in written form before the O. P. A.; that he willfully sought to cheat this complainant of the use of that affidavit, information and proof, and by refusing to certify to what had been previously testified to, my client would thereby lose possession of his apartment, in the City of Bayonne, which is an acute housing shortage area. Complainant reserves his right to take any appeal to the proper tribunal."

The complaining witness, Tomei, prosecutes the present appeal. Since the appeal has reached us for determination without any preliminary motion to dismiss it, we shall in the circumstances by-pass, without comment, the status of the appellant as an "aggrieved party" within the import of the statute. *R. S.* 45:15–18.

 The course of procedure pursued by the commissioners should be scrutinized in the light of the legislation by which their duties are defined and their activities are governed.

The title of the original act (*P. L.* 1921, *c.* 141, *p.* 370) is "An Act to define, regulate and license real estate brokers

and salesmen, to create a State Real Estate Commission and to provide penalties for the violation of the provisions hereof." The object of the act manifestly contemplated the regulation under the police power of the business of real estate brokers and salesmen. *Wensley v. Godby,* 101 *N. J. L.* 325 (*Sup. Ct.* 1925); *Waring v. Jobs,* 104 *N. J. L.* 158 (*E. & A.* 1927); *Kenney v. Paterson Milk & Cream Co.,* 110 *N. J. L.* 141 (*E. & A.* 1933); *Corson v. Keane,* 4 *N. J.* 221 (1950).

It is apparent that the Commission so created was not intended to constitute a tribunal by which the civil rights and liabilities of complainants and brokers *inter sese* were to be adjudicated. "This article shall not be construed to relieve any person from civil liability or criminal prosecution under the laws of this State." *R. S.* 45:15–17.

We are informed that the Housing Expediter does not receive oral testimony in the consideration of applications for the revocation of such certificates. Proof is submitted to him in affidavit form. The basic grievance of the appellant is that the broker declined to supply him for such purpose with an affidavit with respect to his authorization by the landlord to sell the demised premises.

The statute provides that the "commission may, upon its own motion and shall, upon the verified complaint of any person, investigate the actions of any real estate broker * * *." *R. S.* 45:15–17. We do not interpret the statute to require the Commission to conduct a formal hearing of every such complaint. True, the act necessitates a hearing upon notice to the accused licensed broker "before suspending or revoking any license." *R. S.* 45:15–18. *Cf. Taylor v. N. J. Real Estate Commission,* 136 *N. J. Law* 18 (*Sup. Ct.* 1947).

Counsel for the appellant, however, points out that whether the Commission was obliged or not to conduct a hearing, a date for such was designated and a hearing undertaken.

We deduce from the record that an investigation had been made prior to the date of the hearing and that the broker had produced his written authorization.

"Commissioner Walker: My feeling is that the matter has been disposed of. Here is a signed authorization that the broker did have * * *."

Obviously the hearing began with an inquiry into the sufficiency of the complaint in view of the existence of the broker's written authorization. The essence of the complaint was thereupon confined by the attorney of the complainant to "conduct which demonstrates unworthiness, incompetency, bad faith or dishonesty." R. S. 45:15–17(e).

The commissioners then assumed for immediate purposes, without testimony, the truth of the factual ground of the complaint, namely, that the broker had declined to furnish the desired affidavit for presentation by the tenant to the Housing Expediter, and the commissioners resolved that the allegations of the complaint in that particular failed to disclose conduct on the part of the broker which in the acknowledged circumstances justified either the temporary suspension or permanent revocation of the broker's license for unworthiness, incompetency, bad faith or dishonesty.

The commissioners concluded that "on the face of it" (the complaint) there was no relationship between the broker and the tenant which imposed upon the broker the duty voluntarily to "disclose * * * on the application of the tenant * * * whether he has listings or whether he does not have listings."

The ruling of the Commission is analogous to the dismissal of a complaint in a court of law or equity on the ground of its insufficiency. Such action does not constitute a deprivation of due process. Assuredly the Commission was not compelled to inquire whether the landlord had filed a false affidavit with the Housing Expediter. We perceive no justification for an annulment of the conclusion of the Commission.

The determination of the Commission is accordingly sustained and the appeal dismissed.