39 N.J. Super. 214 (1956)
120 A.2d 789
JOHN MIDDLETON, APPELLANT,
v.
DIVISION OF THE NEW JERSEY REAL ESTATE COMMISSION IN THE DEPARTMENT OF BANKING AND INSURANCE, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1956.
Decided February 17, 1956.
*216 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James M. Davis, Jr., argued the cause for the appellant (Messrs. Powell and Davis, attorneys).
Mr. John F. Crane, Deputy Attorney-General, argued the cause for the respondent (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
This is an appeal from an order of the New Jersey Real Estate Commission which suspended the broker's license of appellant for the unexpired portion of the license year 1955, less one day.
The disciplinary action was taken under N.J.S.A. 45:15-17 which provides:
"The commission may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the actions *217 of any real estate broker or real estate salesman, or any person who assumes to act in either such capacity within this State; and the commission may suspend for a period less than the unexpired portion of the license period, or may revoke any license issued under the provisions of this article, where the licensee, in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:
a. Making any false promises or any substantial misrepresentation; or

* * * * * * * *
d. Failure to account for or to pay over any moneys belonging to others, coming into the possession of the licensee; or
e. Any conduct which demonstrates unworthiness, incompetency, bad faith or dishonesty; * * *."
Five complaints charging violations thereof were filed against Middleton. Three of them, Galasso, Brett and Garvin, charged that in each instance he had been given $100 as a deposit toward the construction of a home and an additional $25 as an application fee for a G.I. mortgage loan. In two of the cases it was alleged that credit was not given for the deposit at the time of closing, and that recovery was made over a year later only when the Veterans Administration intervened. In the third case the claim was that although the house was never built, the money had not been returned. (Reimbursement in this instance was made before the hearing.)
The other two complaints were interposed by Theodore C. Palmer and Leonard Burr. The Burr accusation was dismissed after hearing and requires no discussion.
The Palmer complaint alleged that he and Middleton formed John Middleton, Inc., for the building and selling of homes. Middleton became president, and Palmer secretary-treasurer. The corporation went into receivership and subsequently Palmer discovered a corporate check for $1,000 made payable to "cash-payroll," had been endorsed and cashed by Middleton. It purported to bear Palmer's signature as secretary-treasurer as required, but he asserted that Middleton had "forged" his signature and used the proceeds of the check for some unknown and non-corporate purpose.
*218 At the hearing on the Galasso, Brett and Garvin charges, Middleton admitted receiving the moneys from them. His defense was that the sums represented fees or commissions for securing G.I. mortgage loans. He asserted lack of knowledge that under the pertinent federal regulations such fees were forbidden. And he said that on being so advised by the Veterans Administration restitution was made.
The Commission found him guilty in these instances of conduct demonstrating unworthiness and incompetency in violation of subdivision (e), supra, of the statute. However, the statement was made that consideration would be given to the fact of reimbursement in reaching a decision upon the sanction to be imposed, and that final action would await disposition of the Palmer case.
At this final hearing an employee of John Middleton, Inc., testified that he went to the bank with Middleton to cash the $1,000 check. On arrival, the absence of Palmer's countersignature was realized and instead of seeking out Palmer, Middleton signed his name and obtained the cash. Middleton denied affixing the signature and insisted that Palmer did so himself. Palmer contradicted him. There was no contention by Middleton that the signature was authorized or that the practice was engaged in when Palmer was not available; simply the flat denial of the occurrence.
The proof showed, and the Commission so found, that the proceeds of the check were in fact used for payroll purposes except for a surplus of a few dollars which went into the cash box of the corporation.
But following a declaration that no handwriting expert was necessary to establish that Palmer did not sign the check, the Commission determined that the testimony clearly indicated that Middleton "did himself or caused someone other than Theodore C. Palmer to sign the check to expedite the meeting of the payroll of the corporation."
It said also:
"The Commission finds that the testimony of John Middleton with reference to this check, and particularly with reference to the signature of Theodore C. Palmer, was at variance with the true state *219 of facts and was given for the purpose to mislead the Commission and demonstrate unworthiness and bad faith (sic) in violation of sub-division (e) `Any conduct which demonstrates unworthiness, incompetency, bad faith or dishonesty' or Article 45:15-17 Revised Statutes."
Then, after referring specifically to the four cases (Galasso, Brett, Garvin and Palmer) on which guilt of violation of the statute had been established, Middleton's license was suspended for the unexpired portion of the year, less one day.
Appellant contends that the finding of the Commission on the Palmer complaint was not that he had "forged" the corporate check but rather that he had willfully testified falsely in denying that he personally wrote Palmer's signature or caused it to be written thereon, and in asserting that the signature was genuine. The argument continues that since false swearing was not the charge made nor one that he was required to meet at the hearing, it would be a denial of due process to convict and punish him thereon. Cf. State v. Illario, 10 N.J. Super. 475 (App. Div. 1950). So it is urged that because a single penalty was imposed for all four infractions and it cannot be determined what part the alleged illegal conviction played in the decision to suspend the license for the period stated, there ought to be a reversal of the false swearing determination. This, appellant says, should be followed by a remand for resentence on the remaining three cases.
It may be conceded that the statute under which these proceedings were conducted requires notice of an accusation and an opportunity to be heard thereon. N.J.S.A. 45:15-18. However, in our view appellant's position is hypercritical of the statement of the Commission.
The action of an administrative agency such as that involved here should not be subjected to the same close and technical scrutiny as is frequently applied in reviewing the judgment of a court. We look at what was done in the light of the statutory authority conferred; we inquire in a pragmatic way whether there was notice and fair hearing on the charges, and we do not interfere with the finding if it is *220 supported by adequate evidence. Zahn v. Department of Civil Service, 8 N.J. 423, 428 (1952); New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 378 (1950); In re Larsen, 17 N.J. Super. 564, 573 (App. Div. 1952); N.J.S.A. 45:15-18.
Our study of the language of the Commission convinces us that Middleton was found guilty of signing Palmer's name or causing it to be signed on the check in question, with an accompanying finding that his denial thereof was made in order to mislead the triers of the facts. There can be no doubt that such triers were justified in noting that the denial of the charge was willfully false, particularly since the penalty to be imposed rested in their discretion. N.J.S.A. 45:15-17.
In expressing itself, the Commission seems to have taken care to avoid a declaration that Middleton had committed forgery in the criminal sense. Cf. N.J.S.A. 2A:109-1. This effort manifestly resulted from its conclusion that although the accused had signed or caused the check to be signed, the proceeds were actually used for legitimate corporate purposes. Obviously, also, his act with respect to the check was considered improper and violative of subsection (e) of the statute. Likewise, his patently false denial of the conduct attributed to him was deemed noteworthy. We do not think it can be said fairly on the record that Middleton was declared guilty of an additional charge, one of which he had no notice or opportunity to meet. But we have no doubt of the right of the agency in deciding upon the punitive measure to be imposed to give heed to its belief that the malefactor willfully lied in defending against the charge.
In the situation presented, ample evidence existed for the adverse judgments on all four accusations. In fact, no suggestion is made to the contrary. The attack is limited to the claim as above described.
The imposition of a single penalty for all the violations is not improper under the circumstances. The Commission has broad discretionary control over the matter. Having reached the conclusion of guilt on each infraction, *221 the overall demonstration of unworthiness might properly be met with a single penalty. The present doctrine in criminal cases which makes separate sentences advisable for individual convictions (Cf. State v. Kaufman, 18 N.J. 75, 83 (1955)) cannot be applied strictly to administrative regulatory proceedings of this type. However, the philosophy of the Supreme Court in the Kaufman case may well be studied, even in such proceedings where multiple complaints are involved.
The order under review is affirmed.