39 N.J. Super. 526 (1956)
121 A.2d 555
DIVISION OF THE NEW JERSEY REAL ESTATE COMMISSION IN THE STATE DEPARTMENT OF BANKING AND INSURANCE, PLAINTIFF-RESPONDENT,
v.
LOUIS PONSI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1956.
Decided March 15, 1956.
*527 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Harry L. Shure argued the cause for appellant (Mr. Carl Klein, attorney).
Mr. John F. Crane, Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey).
The opinion of the court was delivered by JAYNE, J.A.D.
Primarily it may be acknowledged that the Legislature has empowered the New Jersey Real Estate Commission in stated circumstances to decline to issue or renew and also to suspend or revoke the license of a broker who, inter alia, is adjudged to have pursued any conduct *528 which demonstrates bad faith or unworthiness. N.J.S.A. 45:15-17. In the present proceedings the Commission after an investigational hearing resolved that the appellant had been guilty of deportment of that objectionable nature, and for that cause denied him a renewal of his real estate broker's license. The legal and factual propriety of the Commission's action is the subject of this appeal.
The basic circumstances of essential relevancy are not in cogent respects in a state of dispute, hence a summarization of them will be sufficiently explanatory. Mr. and Mrs. Leonard D. Sullivan, who were desirous of acquiring a residence in Spring Lake, indicated to L.D. Edwards, a real estate broker, their interest in purchasing the property known as 109 Pennsylvania Avenue. From a sign displayed on the property, the Sullivans and the broker Edwards inferred that it was owned by the appellant, Louis Ponsi.
Negotiations between the broker Edwards and the appellant ensued, resulting in the settlement of the mutually acceptable terms of the conveyance. Edwards prepared in writing a conformable contract of sale in which he designated the appellant as the vendor and Sullivan and his wife as the purchasers, and transmitted it to the appellant for execution. The appellant forthwith informed Edwards that although he, Ponsi, was the actual owner of the premises, the record title thereto was in his corporation having the name Lakeview Gardens and Homes, Inc. Edwards in consequence of that divulgement redrew the contract, substituting therein the designated corporation as vendor instead of the appellant individually. The contract of sale so altered was executed by the purchasers and by the appellant on behalf of the corporate vendor on August 23, 1954.
There are two paragraphs of the contract of sale which are of fundamental significance in relation to the subsequent conduct of the appellant who himself was the holder of a real estate broker's license.
"IT IS UNDERSTOOD AND AGREED that the party of the Second Part need a mortgage of $17,200.00 in order to close title. The party of the Second Part will make an application first to the *529 Veterans Administration for a mortgage loan of $17,200.00 and secondly to the Federal Housing Administration for a $17,200.00 loan. In the event a commitment is not received from either of the above sources, or any other source within THIRTY (30) DAYS, of the date of this agreement, then the party of the first part shall have the privilege of returning the deposit of $2,150.00 and declaring the contract null and void.
IT IS FURTHER UNDERSTOOD AND AGREED between the parties that in the event the parties of the Second Part cannot secure a mortgage of $17,200.00, they can request the return of the deposit of $2,150.00 and declare the contract null and void."
It eventuated that the purchasers were unable to obtain the specified mortgage loan commitment and in despair were obliged to nullify the contract and request the return to them of the initial payment thereunder of $2,150.
It appears that with funds supplied by the purchasers, Edwards in compliance with the instructions of the appellant and with agreement thereto had made the check dated August 24, 1954 in satisfaction of the initial payment payable to one Carl Klein, an attorney, with the notation thereon, "Deposit of Leonard D. Sullivan, in trust for Louis Ponsi." It was the indubitable intention to place the down payment in escrow to await either the consummation or the contingent nullification of the contract for the contemplated failure of the purchasers to achieve the requisite mortgage loan.
Unavailing demands were made upon the appellant by Edwards and by Mr. Sullivan for the refund of the $2,150. The appellant declined to authorize his attorney, Mr. Klein, to return the deposit so held in escrow, although he himself seems to have deemed it to be the contractual obligation to do so. His obduracy and the inflexibility of his attorney, the escrow agent, persisted until a situation arose wherein Mr. Sullivan was in dire need of immediate funds. He engaged an attorney for whose services he was obliged to pay, in an endeavor to recover for him the due and payable refund of $2,150.
Mr. Sullivan explained that subsequently, due to the exigent pressure of his financial needs and the inimical refusal of the appellant to authorize the attorney to release *530 to him the $2,150, he accepted the advice of his own attorney and consented to receive $1,950 in satisfaction of his demand. Thus he asserts that in effect the appellant unconscionably and with evil purpose circumstantially extorted from him the sum of $200.
As hereinbefore intimated, it was either incidentally known or ascertained that the appellant had theretofore been granted a real estate broker's license. Mr. Sullivan revealed in the form of a verified complaint to the Commission his experiences with the appellant in the transaction to which the foregoing reference is made. A consequent inquiry was conducted by the Commission on July 21, 1955 and on October 19, 1955, at which the appellant and his attorney resisted the complaint.
At the conclusion of the hearing the Commissioners first expressed the recommendation that the appellant refund to the Sullivans the $200 balance of the deposit and reimburse them for their expenditure of $115 for the services of their attorney. The appellant declined to adopt that recommendation.
The position chosen by the appellant is that since he did not act in the particular transaction in the capacity of a real estate broker, the statute does not empower the Commission to determine the character of his conduct under subdivision (e) of N.J.S.A. 45:15-17. His insistence is that he functioned only as president of the corporation. He acknowledged that he, his wife and his son comprised the only stockholders of the corporation. He professed ignorance of the number of shares held by each, but explained that his wife and son, constituting a majority of the board of directors, at a meeting voted against the return of the deposit in full.
The appellant's theoretical defense may be discussed upon the premise that he in reality acted entirely in his personal status as the vendor in corporate attire and not in the capacity of a real estate broker.
The question then propounded concerns the authority of the Commission to suspend, revoke or deny the renewal *531 of a license to a broker who is deemed guilty of "any conduct which demonstrates unworthiness, incompetency, bad faith or dishonesty" where that conduct is not connected with the pursuit of his licensed privilege.
The answer must be discovered in the interpretation or construction of the terms of the statute. The statutes of some states have been construed to confine the delegated authority of the Commission to suspend or revoke the license exclusively to activities in which the licensee has actually engaged as a real estate broker. For examples, see Schomig v. Keiser, 189 Cal. 596, 209 P. 550 (Sup. Ct. 1922); Blakeley v. Miller, 232 Iowa 980, 7 N.W.2d 11 (Sup. Ct. 1942); Robinson v. Missouri Real Estate Commission, 280 S.W.2d 138 (Kansas City Ct. App. 1955).
In the Blakeley case, supra [232 Iowa 980, 7 N.W.2d 13], the court commented:
"* * * One could think of many good reasons why it would be better to have the actions outside of his conduct in acting as a real estate agent apply to his right to hold a real estate license, but this is for the legislature to say and not for the court to write into the statute."
It is noticeable that our statute obliges an applicant for the license to furnish to the Commission "evidence of good moral character." N.J.S.A. 45:15-9. Compare, applicant for insurance broker's license, N.J.S.A. 17:22-6.6. It seems inconceivable that the Legislature intended to establish one standard for the issuance of a license and another for its renewal or revocation. The Commission may "in its discretion" refuse to grant any new license "upon sufficient cause being shown." N.J.S.A. 45:15-15. No license shall be issued to any person who has been convicted of certain specified criminal offenses. N.J.S.A. 45:15-12.1. Those provisions display the broad legislative object and purpose to limit the licensees to reputable, honorable and conscientious persons.
It is therefore in recognition of the indubitable intent of the Legislature that a significant meaning be ascribed to the *532 specifications of Section 45:15-17, such as (e) "Any conduct which demonstrates unworthiness, * * * bad faith * * *"; (h) "Being convicted of a crime * * *"; and (1) "Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing." (Italics supplied)
Would not personal acts of insanity unrelated to the brokerage business demonstrate the mental incompetency and unworthiness of the licensee? Would not defalcation as a bank teller demonstrate bad faith or dishonesty within the import of the real estate brokers' statute? The mentionable variety of such disqualifying acts or manifestations of a licensee extraneous the practice of brokerage and within the signification of "unworthiness" is limited only by the fertility of one's imagination. This explains the use of the word "unworthiness," viz., not fit, undeserving, unsuitable.
It is of transient interest to recall that in a recent appeal debated before this Part in Middleton v. Division of New Jersey Real Estate Commission, 39 N.J. Super. 214 (App. Div. 1956), the principal charge of unworthiness did not implicate any act of the licensed broker arising from a broker-client relationship, yet no one even whispered the notion that the Commission lacked authority to entertain such a complaint.
Judge Clapp in Goodley v. New Jersey Real Estate Commission, 29 N.J. Super. 178, 181 (App. Div. 1954), defined the word "unworthiness" to signify in its statutory context "a lack of those ethical qualities that befit the vocation." See, also, Marrs v. Matthews, 270 S.W. 586, 588 (Tex. Ct. of Civ. App. 1925). Noticeable is the circumstance that the appellant in the Goodley case also occupied the role of president of the corporate grantor.
It seems from the examination of the statute that the advantageous object exhibited by its composition was to create and maintain a commission to scrutinize in general and with care the character, competency, and integrity of license applicants and license holders to the end that in the interest of the public welfare, incompetent, unworthy and *533 unscrupulous persons would be excluded from the real estate brokerage business. (See extrinsically, sponsor's statement, L. 1921, c. 141; Deaney v. Linen Thread Co., 19 N.J. 578, 584 (1955)). The act is essentially regulatory in purpose. Corson v. Keane, 4 N.J. 221 (1950); Tomei v. Annetta, 11 N.J. Super. 456 (App. Div. 1951).
We therefore express the opinion that acts of a licensed broker comprehended by the statute in its specifications which are determined by the Commission to disqualify the real estate broker from the retention or renewal of his license are not necessarily restricted to those committed in the pursuit of the privileges accorded by the license.
It is to be appreciated that what lack of personal qualities should render one unworthy of a license would be most difficult of definite enumeration. In some official or administrative group must be lodged pragmatically a sound discretion in resolving those who are unworthy. One who seeks and accepts a license impliedly consents to submit his qualifications to the statutory tribunal which the Legislature has created to decide his fitness to continue the enjoyment of the licensed privileges within the legitimate discretionary boundaries of the applicable law.
Assuredly, there was ample evidence in the present proceeding logically to generate the inference that the appellant deliberately indulged in unfair dealing in the course of a real estate transaction of his own.
The sequential determination of whether the appellant's conduct in that instance demonstrated an unworthiness to obtain a renewal of his license was a problem appropriately addressed to the Commissioners in their administrative field. We are not at liberty in the exercise of our appellate function optionally to usurp or supersede the supervisory powers entrusted to the Commissioners by the Legislature. New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 378 (1950); Zahn v. Department of Civil Service, 8 N.J. 423, 428 (1952); Middleton v. Division of New Jersey Real Estate Commission, supra.
The determination under review is affirmed.