103 N.J. Super. 11 (1968)
246 A.2d 493
CRESCENT INVESTMENT CO., A CORPORATION, PLAINTIFF,
v.
COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 18, 1968.
*14 Mr. W. Louis Bossle for plaintiff.
Mr. Arthur J. Sills, Attorney General of New Jersey, for defendant (Mr. E. Robert Levy, Deputy Attorney General, of counsel).
WICK, J.S.C.
This is a declaratory judgment action brought to determine the constitutionality of N.J.S.A. 17:11A-1 et seq., more commonly known as The Secondary Mortgage Loan Act of 1965. The facts are as set forth below.
Plaintiff Crescent Investments Company was granted a license to do business pursuant to The Secondary Mortgage Loan Act of 1965, N.J.S.A. 17:11A-1 et seq. (hereinafter referred to as the "act"). By virtue of its authority as a New Jersey licensee plaintiff entered into numerous secondary mortgage loans with certain homeowners. Following an investigation based upon charges made against plaintiff regarding its lending activities, Charles R. Howell, the commissioner of Banking and Insurance of this State, issued an order to show cause why plaintiff's secondary mortgage loan license should not be suspended, revoked or not renewed since it had violated the various provisions of the act and certain rules and regulations promulgated thereunder.
On the return date of the order to show cause the Deputy Attorney General appeared to present the evidence in support of the charges made in said order. After the State completed its case and before plaintiff presented its, plaintiff instituted the within action by way of verified complaint and order to show cause why the Commissioner should not be enjoined from further prosecuting his order to show cause and for a declaration that sections 11 and 29 of the act are unconstitutional. Plaintiff's order was issued and an interlocutory injunction was granted until such time as the court should *15 make a determination as to the constitutionality of these provisions.
The provisions toward which plaintiff specifically directs its attack are as follows:
N.J.S.A. 17:11A-11:
"The commissioner may suspend, revoke or refuse to renew any license issued hereunder, * * * if he shall find that the licensee or any owner, director, officer, member, partner, stockholder, employee or agent of such licensee has:
(a) made any material misstatement in the application;
(b) committed any fraud, engaged in any dishonest activities, or misrepresented or failed to disclose any of the material particulars of any secondary mortgage loan transaction to any one entitled to such information;
(c) violated any of the provisions of this act * * *;
(d) otherwise demonstrated unworthiness * * *."
N.J.S.A. 17:11A-29:
"No obligation arising out of a secondary mortgage loan shall be enforceable in the courts of this State unless such loan was negotiated and made in full compliance with the provisions of this act."
Plaintiff attacks these provisions as void for vagueness and overbreadth.
At the ouset it should be borne in mind that declaring a statute unconstitutional is a judicial power to be delicately exercised; Harvey v. Essex County Board of Freeholders, 30 N.J. 381 (1959). The burden of proving a statute unconstitutional is an extremely formidable one. Levitt & Sons, Inc. v. Division Against Discrimination, etc., 31 N.J. 514, 531 (1960). And a party who attacks a statute as unconstitutional has a strong burden of proving it, since the validity of the statute is presumed, and a court will not declare legislation void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Supermarkets General Corp. v. Sills, 93 N.J. Super. 326 (Ch. Div. 1966). The mere fact that more precise language might have been used by the Legislature does not render a statute unconstitutionally vague. All that need be shown is that the statute adequately *16 informs persons accused of violations thereof of the nature and cause of the accusation against them; that is, the statute must reasonably notify the licensee involved here of the conduct prohibited. Supermarkets General Corp v. Sills, supra; United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921). Thus, if the general terms of the statute, measured by common understanding, fairly and adequately convey its meaning to all concerned, the statute must be upheld. Laba v. Newark Board of Ed., 23 N.J. 364 (1957).
"* * * [A] statute should be interpreted by a mind sympathetic to its aims which recognizes the difficulties inherent in formulating a precise expression of legislative intent in light of the diversity of circumstances to be covered." Lane v. Holderman, 23 N.J. 304, 323 (1957).
"In dealing with the question of standards it is elementary that we are not confined to the specific terms of [the statutory action] but must examine the entire act in the light of its surroundings and objectives. See Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). Nor are we restricted to the ascertainment of standards in express terms if they may be resonably implied from the entire act." Ward v. Scott, 11 N.J. 117, 123 (1952).
It is within the framework set forth above that this court must examine plaintiff's complaints.
Plaintiff first attacks N.J.S.A. 17:11A-11(a), which authorizes the Commissioner to cancel a license for "any material misstatement in the application." Indeed, says plaintiff, it is clear that a licensee on reading this provision would naturally and properly assume that he could not lose his license for any misstatement which was not material. Yet nowhere is there a section which defines that which is material. Similarly, continues plaintiff, under subsection (b) the license may be cancelled if the licensee, or any other person named in that section, fail "to disclose any of the material particulars of any secondary mortgage loan transaction to any one entitled to such information." Again there is no indication of what constitutes "material particulars" of the transaction. Plaintiff contends that although a licensee would naturally and properly assume that failure to disclose *17 particulars which were not regarded material would be insufficient to revoke his license, nowhere is he told what are and what are not material particulars. Plaintiff further argues that although a licensee could lose his license for failure to disclose these material particulars to "anyone entitled to such information," nowhere is there any indication as to who in fact is so entitled. As a result, says plaintiff, men of common intelligence must guess at several meanings, and consequently the statute is not sufficiently explicit to inform plaintiff what conduct or omission on its part, or those of its employees, might render it subject to the statutory penalties.
As if this were not enough, continues plaintiff, section 11 states that the Commissioner may suspend, revoke or refuse to renew the license. Plaintiff contends that use of the word "may," rather than "shall," gives the Commissioner the power to discriminate as to whose license he will affect. Thus, for a "material misstatement in the application," without being told what constitutes a material misstatement, or for a failure "to disclose any of the material particulars" of a secondary mortgage loan transaction, without guidance as to what these are, or a failure to disclose these "to any one entitled to such information," without having set forth who is so entitled, the Commissioner may suspend, revoke or refuse to renew a license; the result will inevitably be that the license will hang on the whim or caprice of the Commissioner.
Plaintiff also contends that the standard of defendant's authority to suspend, revoke or refuse to renew a license under N.J.S.A. 17:11A-11 is the same as the prescribed authority for him to refuse to issue a license under N.J.S.A. 17:11A-5(b). (17:11A-5(b) specifically provides that the Commissioner may refuse to issue a license for "any reason for which the commissioner may suspend, revoke or refuse to renew any license under section 11 of this act.") It follows, says plaintiff that the standards prescribed by said section 11, reading "committed any fraud, engaged in *18 any dishonest activities [etc.]," must necessarily relate not only to such activities as are connected with the license, but any and all such activities no matter when committed or how remote in time, whether or not connected with the license or a secondary mortgage loan, and not only as to a principal but to its shareholders, employees or agents as well. In these particulars, argues plaintiff, the statute is on its face repugnant to the Due Process clause and is a violation of equal protection of the Fourteenth Amendment of the United States Constitution, and is void for overbreadth.
Plaintiff's final contention is that section 29 of the act, precluding enforcement of any loans given without full compliance with the act, is not only vague but clearly a deprivation of property without due process of law; it impairs the obligation of contracts made under the act.
Each of the provisions attacked in plaintiff's complaint must be read in light of the overall purpose and objective of the Secondary Mortgage Loan Act. A review of the relevant legislative history discloses that various institutions of lending, both local and out-of-state, had been engaging in loan transactions with New Jersey residents in which misleading advertising was taking place and unconscionable amounts of interest as well as exorbitant fees were being exacted. These loans were secured by secondary mortgages on real estate located in New Jersey. It was to protect New Jersey residents from this misleading advertising and exorbitant charges and fees that the Secondary Mortgage Loan Act was enacted. This legislation is very restrictive regarding fees to be charged, safeguards around the transaction itself, location of the place of business, keeping books and records, and the like. In short, this legislation was a remedial measure designed to give the State a very tight-fisted control over the secondary mortgage loan business. Thus, no person may make or negotiate a secondary mortgage loan unless he is licensed by the Commissioner (N.J.S.A. 17:11A-2); licensees are prohibited from transacting business under any other name or from maintaining *19 an office at any other location than that designated in the license (N.J.S.A. 17:11A-7(c)); licensees must file surety bonds with the Commissioner (N.J.S.A. 17:11A-9); each licensee is required to maintain certain books, accounts and records relating to his transactions at his place of business (N.J.S.A. 17:11A-17); the Commissioner is empowered to prescribe the minimum information to be shown in these books, accounts and records (N.J.S.A. 17:11A-19); ledger cards for each loan are required by the Commissioner (Rule 3), which cards must contain the name and address of the borrower and various fees and charges; the amount of interest permitted is regulated by statute (N.J.S.A. 17:11A-21); the maximum charges, fees, services, points and premiums which are permitted are listed in a schedule by statute (N.J.S.A. 17:11A-22); certain specified provisions are prohibited in any instrument evidencing or securing the loan (N.J.S.A. 17:11A-23); no power of attorney may be used to confess judgment, etc. It becomes clear from the foregoing that the policy behind this legislation was to provide the strictest safeguards so as to assure the borrowing public that it would be treated with fairness. Since this court finds that the legislation hereunder attack is remedial rather than penal, the cases cited by plaintiff concerning the need for criminal intent are inapposite.
It is this court's opinion that in light of the overall policies and objectives of the statute, and reading all of the provisions together, such terminology as "material misstatements," "material particulars," "anyone entitled to such information" and such other terms attacked by plaintiff for vagueness are sufficiently clear to forestall any such attacks. See Solo Cup Co. v. N.L.R.B. 332 F.2d 447 (4 Cir. 1964); Dunn v. Decca Records, 120 F. Supp. 1 (S.D.N.Y. 1954).
A misstatement would clearly be material if it would be likely to affect the decision of the Commissioner as to issuing or renewing a license. It is obvious to the court that misstatements regarded as material by the Legislature (and consequently by the Commissioner) are those statements *20 which misrepresent some fact which the act was specifically designed to protect against. We are of the opinion it would be equally clear to the applicant. See McGowan v. State of Maryland, 316 U.S. 420 (1961). Thus, misstatements as to interest charged, fees exacted and other such misstatements which by reason of their falsity would case a shadow on the integrity of the applicant in this type of business venture, are such misstatements as are material under the statute.
A like conclusion is reached regarding the term "material particulars" of a secondary loan transaction. Thus, if it came to light that plaintiff failed to accurately disclose interest rates, or to disclose the various fees and charges it would exact, or that a secondary mortgage loan was involved, or any other pertinent information regarding a particular transaction, the Commissioner would be justified in suspending, revoking or refusing to renew a license.
The phrase "anyone entitled to such information" also sufficiently clear when read in context of the entire act. For those entitled to such information are obviously those persons directly interested in the transaction pursuant to the intent of the Legislature, namely, persons to whom the licensee is "selling" the loan. This is not to say that the phrase is limited to the borrower himself, for the court feels this broader phraseology was specifically intended to encompass not only the borrower, but also anyone who might have such influence as to convince a potential borrower to enter into the particular loan transaction. Thus, for example, failure to disclose such material particulars to the potential borrower's attorney or to some person in his confidence to whom he looks for advice would be encompassed. In short "any person entitled to such information" is any person to whom the licensee knows it will be necessary to "sell" the loan before the actual borrower enters into the transaction.
Plaintiff next attacks the statute on the ground that, as it interprets the act the Commissioner can revoke, suspend *21 or refuse to renew or to issue a license if he finds that the applicant (or its representatives) has committed any fraud, engaged in any dishonest activities, misrepresented or conducted other similar activities, regardless of when or where such activities take place and regardless of whether these activities are connected with the license itself or any secondary mortgage loan transaction. Plaintiff argues that consequently the statute is on its face repugnant to the Fourteenth Amendment of the United States Constitution. Although there is some question in the court's mind as to whether the act goes as far as plaintiff interprets it to go, even if plaintiff's interpretation is correct, the validity of the act would not be affected. The court feels that the issue was impliedly decided in the case of Division of the N.J. Real Estate Commission, etc. v. Ponsi, 39 N.J. Super. 526 (App. Div. 1956). In that case the issue raised was whether the Real Estate Commission had authority to suspend, revoke or deny the renewal of a real estate license when the licensee was deemed guilty of conduct demonstrating unworthiness, incompetency, bad faith or dishonesty, where that conduct was not connected with the pursuit of his licensed privilege. The court there concluded that acts not connected with the real estate license were sufficient to revoke the license.
"It seems from the examination of the statute that the advantageous object exhibited by its composition was to create and maintain a commission to scrutinize in general and with care the character, competency, and integrity of license applicants and license holders to the end that in the interest of the public welfare, incompetent, unworthy and unscrupulous persons would be excluded from the real estate brokerage business. * * *
We therefore express the opinion that acts of a licensed broker comprehended by the statute in its specifications which are determined by the Commission to disqualify the real estate broker from the retention or renewal of his license are not necessarily restricted to those committed in the pursuit of the privileges accorded by the license." (at pp. 532-533)
The purpose of citing this case is not to affirm plaintiff's interpretation of the breadth of the act here under *22 consideration, but rather for the implications raised by the decision. It goes without saying that it is the court's primary duty to uphold the Constitution of this State and of the United States. The court must anticipate the constitutional ramifications of each decision it makes, even when not expressly called upon to do so so as not to infringe upon the constitutional rights of any individual. Nevertheless, when called upon to interpret whether the act was intended to allow revocation of a license for acts not connected with the license, the Ponsi court answered in the affirmative, thus upholding the Real Estate Commission's denial to renew Ponsi's license. The Appellate Division obviously would not have reached such a conclusion had it felt that that conclusion was unconstitutional. To do so would be in derogation of its basic function. Indeed, the Appellate Division could and probably would have interpreted the statute in accordance with the licensee's wishes had it felt that the broader interpretation was unconstitutional. For it is well-settled that where a statute is capable of two constructions, one of which would render it unconstitutional and the other valid, that which will uphold its validity must be adopted. See, e.g., Ahto v. Weaver, 39 N.J. 418 (1963). It is therefore this court's conclusion that the Appellate Division's determination in the Ponsi case impliedly supports the constitutionality of like powers which may be found in the statute challenged herein. And this is so notwithstanding that the prescribed conduct extends to employees of the licensee, for this extension does no more than make the licensee responsible for determining that its personnel are not of the quality which the Legislature obviously felt were necessarily to be excluded from the business of secondary mortgage loans in light of the protection intended to be afforded by that act.
As mentioned previously, plaintiff also challenges the act on the ground that section 11A-11 permits the Commissioner to revoke, suspend, or refuse to renew, without requiring him to do so if he finds a violation of that section. This provision, plaintiff contends, gives the Commissioner the *23 right to discriminate, with the result that the cancelling of a license might be the result of whim or caprice. It has already been decided that the provision herein questioned provides standards which indicate the types of offenses for which the license may be suspended, revoked, or denied. It is the discretionary power to deny when such circumstances come to light that is presently challenged. It is well-settled that a standard will not be deemed inadequate simply because certain discretion allowed may be abused; arbitrary action by an official will not be anticipated. See e.g., Moyant v. Borough of Paramus, 30 N.J. 528 (1959); Weiner v. Borough of Stratford, 15 N.J. 295 (1954). Thus, in Moyant it was stated:
"We ought to say that we find no legal obstacle to an ordinance enactment making the issuance of a canvasser's license discretionary (governed by sufficient standards) rather than automatic. Denial does not have to rest entirely on a criminal record for other important facts may well enter into the propriety of issuance to a particular individual in the light of the evil sought to be guarded against by the regulation." (at pp. 553-554)
Here the Legislature has created an administrative body headed by a Commissioner, presumably well-versed in the field of loan transactions, to determine when violations of the statute should be sufficient to justify denial or revocation of a license. Indeed, he would through his expertize be more likely to be aware of the "other important facts" mentioned above than the Legislature itself might be. This court will not anticipate an abuse of the discretion specifically given to the Commissioner by the Legislature.
"It is to be appreciated that what lack of personal qualities should render one unworthy of a license would be most difficult of definite enumeration. In some official or administrative group must be lodged pragmatically a sound discretion in resolving those who are unworthy. One who seeks and accepts a license impliedly consents to submit his qualifications to the statutory tribunal which the Legislature has created to decide his fitness to continue the enjoyment of the licensed privileges within the legitimate discretionary boundaries of the applicable law." Division of the N.J. Real Estate Commission, etc. v. Ponsi, supra, 39 N.J. Super., at p. 533.
*24 Finally, plaintiff challenges section 29 of the act which precludes enforcement of any secondary mortgage loan unless made and negotiated in full compliance with the act. Plaintiff's challenge is that this provision is not only vague but clearly impairs the obligation of contracts made under it, and is therefore a deprivation of property without due process, a taking without just compensation. Suffice to say that this court does not feel that the issue is properly before it at this time. The act is challenged as a result of certain administrative proceedings taken against plaintiff. It is by reason of these proceedings that plaintiff is given standing to challenge it. The Commission does not in any way attempt to deal with the enforceability of obligations arising out of loans made by plaintiff. There is therefore no justiciable issue between plaintiff and the defendant Commissioner concerning the enforceability of loans given under this act.