Harry **SANDER,** d/b/a **Middlewest Realty Company, Inc.,** Appellant,

v.

**MISSOURI REAL ESTATE COMMISSION,**
Respondent.

**No. 50621.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 22, 1986.

Motion for Rehearing and/or Transfer
Denied May 20, 1986.

Application to Transfer Denied
June 17, 1986.

Ziercher, Hocker, Human, Michenfelder & Jones, Edward K. Fehlig, St. Louis, for appellant.

William L. Webster, Atty. Gen., Richard Baugh, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Harry Sander, d/b/a Middlewest Realty Company, Inc., appeals from the judgment of the trial court affirming the order of the Missouri Real Estate Commission which

placed his real estate license on probation for one year. We affirm.

Sander was in the business of buying, rehabilitating and selling real estate. He was the sole shareholder and officer of Middlewest Realty Company, Inc. (Middlewest). Both he and the corporation were licensed as real estate brokers in Missouri.

The Missouri Real Estate Commission (Commission) filed a two-count complaint against Sander, charging Sander with violating certain provisions of the Real Estate Agents and Brokers Act, Chapter 339 RSMo (1978). In Count I, the Commission alleged that Sander had violated §§ 339.-100.2(3) and (18) RSMo (1978) in that he had improperly retained certain earnest money. In Count II, the Commission alleged that Sander had violated §§ 339.100.-2(1), (14) and (18) RSMo (1978) by failing to maintain an escrow account.

A hearing was held before the Administrative Hearing Commission. The Hearing Commissioner found that Sander was guilty on both counts as charged and, in addition, had also violated Regulation 4 C.S.R. 250-2.080(9) for his failure to maintain an escrow account and § 339.105(2) RSMo (Cum.Supp.1984) for his failure to notify the Commission of the name of the escrow account and of the bank at which it was maintained. Thereafter the Commission ordered Sander's real estate broker's license placed on probation for one year subject to certain conditions. The circuit court affirmed that order.

To paraphrase the Hearing Commissioner's Findings of Fact, on November 26, 1979, Sander, as president of Middlewest, contracted with Mr. and Mrs. Ennis (Buyers) for the sale of a residence owned and offered for sale by Middlewest. Another employee of Middlewest acted as the sales agent. The price was $47,000. Buyers made two earnest money deposits which totaled $2,400. The contract provided that Sander install a new central air conditioning system and a water heater at his expense. There was also a contingency that Buyers obtain an FHA insured loan for $45,000 by December 26, 1979. The closing date was January 2, 1980.

Buyers applied for a loan through a mortgage company owned by Sander. Sander was obligated under the contract to procure an FHA appraisal. The first FHA appraisal valued the house at $41,500. Sander requested a second appraisal because the first appraisal had not considered the value of the new central air conditioner and hot water heater, neither of which had been installed by the time of the first appraisal. As a result of the need for the second appraisal, Buyers did not have a financing commitment by December 26. Both parties waived the provision in the contract specifying that financing be secured by that date.

By January 2, the closing date, Sander had installed the air conditioning system but not the hot water heater; and Buyers had not received financing. Buyers requested a refund of their earnest money. Sander agreed to return only $1,300 of the deposit because he claimed that he was entitled to be reimbursed $1,100 for the cost of the air conditioning system. Buyers filed a civil action against Sander for the return of their earnest money and complained to the Commission about Sander's actions. A second appraisal valued the house at $43,750. On January 18, 1980, Sander wrote Buyers stating that he was willing to sell the property to them for the amount of the last appraisal. Buyers did not respond to this offer.

Shortly thereafter, an agent for the Commission audited Middlewest's general business account, which on five separate dates following the receipt of the earnest money had contained less than $2,400. During that same period of time, Sander also maintained an escrow account, titled in the name of HAS investment. He had not disclosed the existence of this account to the Commission.

Initially we address the question of whether Sander, within the context of this sale, was acting as a real estate broker. A real estate broker is defined by statute as "any person, copartnership, association or

corporation, foreign or domestic who, for another, and for a compensation or valuable consideration" buys, sells or exchanges real estate or offers to do so. § 339.010, RSMo (1978). Sander argues that the strictures of § 339.100 do not apply to him in the present case because his conduct in this sale was not in the capacity of a real estate broker. Although he concedes that his corporation owned the property, he argues that his status as sole stockholder of that corporation made him and his corporation one and the same. He therefore was not selling the property "for another" under § 339.010.

We recognize that, under certain circumstances, owners who sell their own property do not come within the scope of § 339.-100. Section 339.010(5)(1) reads:

5. The provisions of this chapter shall not apply to:

(1) Any person, partnership or corporation who as owner or lessor shall perform any of the acts described in subsection 1 of section 339.010 with reference to property owned or leased by them, or to the regular employees thereof, *provided such owner or lessor is not engaged in the real estate business as a vocation;* ... (Emphasis added.)

By claiming that he is the alter ego of his corporation, Sander is seeking to pierce the corporate veil for his own benefit. The legal fiction of a corporation will be disregarded when necessary to prevent fraud or injustice or to check an unlawful purpose. *Smith v. City of Lee's Summit,* 450 S.W.2d 485, 489 (Mo.App.1970). "[A] corporation will be regarded as a separate legal entity even though there be but a single stockholder. Concomitantly, persons who choose to incorporate may not evade the consequences of doing so merely to suit their individual convenience." (Citations omitted.) *Love v. Ben Hicks Chevrolet, Inc.,* 655 S.W.2d 574, 576 (Mo.App. 1983).

Although Sander was a corporate officer, his sale of corporate real estate was the sale of real estate "for another." He was therefore a broker in connection with the instant transaction and the provisions of

Chapter 339, including § 339.100, were applicable to him. *See, e.g., Meitner v. State Real Estate Comm'n,* 1 Pa.Cmwlth. 426, 275 A.2d 417 (1971).

■ The statutes governing real estate brokers contained in Chapter 339 were enacted to protect the public from fraud and incompetence. *Mueller v. Ruddy,* 617 S.W.2d 466, 474 (Mo.App.1981), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981). "They will be strictly construed against anyone claiming to be exempt from the provisions." *Id.* Both Sander and Middlewest were licensed as brokers and were "engaged in the real estate business as a vocation." As such, they were clearly subject to the provisions of Chapter 339. Sander should not be permitted to strain statutory construction to avoid regulation under the statutes.

We now consider Sander's specific contentions on appeal. Sander first challenges the Commission's finding that he violated § 339.100.2(3) by retaining Buyers' earnest money deposit. In Point II, he avers error in the finding that he did not comply with § 339.100.2(1) by failing to place the earnest money into an escrow account. Under each point, he proposes several arguments in support of these claims.

Capsulated, his arguments are (1) that earnest money is not property which belongs to another, and (2) that it is unnecessary to place earnest money into an escrow account.

■ Section 339.100.2 provides that a complaint may be filed against a broker when the Commission believes there is a probability that a licensee has engaged in certain proscribed acts, including but not limited to the following:

(1) Failure to maintain and deposit in a special account, separate and apart from his personal or other business accounts, all moneys belonging to others entrusted to him while acting as a real estate broker, or as escrow agent, or as the temporary custodian of the funds of others, until the transaction involved is consummated or terminated, unless all parties

having an interest in the funds have agreed otherwise in writing;

\* \* \* \* \* \*

(3) Failing within a reasonable time to account for or to remit any moneys, valuable documents or other property, coming into his possession, which belongs to others; ...

The sale contract contains the following provision pertaining to earnest money:

Earnest deposit to be retained by seller's agent ...; if sale is closed, earnest deposit to apply on sale commission; ... if sale be not closed by date fixed therefor owing to failure of performance by purchaser, earnest money shall be forfeited by purchaser....

Under the express terms of the sale contract, Sander was not entitled to the earnest money until such time as Buyers either breached or performed the contract. If Sander defaulted, then Buyers were entitled to have the earnest money returned to them. The earnest money did not belong to Sander "until the transaction involved [was] consummated or terminated." § 339.100.2(1). Earnest money was therefore money "belonging to others." Having determined that it was money "belonging to others," it follows that the earnest money should have been deposited in a special escrow account. § 339.100.2(1).

The next issue is whether the Buyers in this case were entitled to have their earnest money deposit returned to them. Section 339.100.2(3) requires that money "which belongs to others be remitted within a reasonable time." ·

■■■ Sander argues that he was justified in keeping the earnest money because, under an amendment to the contract, there was an implied extension of the contract date until such time as the FHA appraisal was available to the parties.[1] Sander mis-

interprets the effect of this contract amendment. The amendment to the contract merely established a *condition precedent* to Sander's duty to convey and Buyer's duty to pay the purchase price. *See Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667, 672 (Mo.App. 1983). No contract based upon a condition can be enforced until the contingency upon which it depends has happened. *Id.*

Sander did not fulfill the condition that he deliver an FHA appraisal to Buyers by the closing date, January 2. By the express terms of the contract amendment, Buyers were therefore not "obligated to complete the purchase of the property" and did not "incur any penalty by forfeiture of earnest money deposits." The failure to secure an FHA appraisal by the closing date did not result in an automatic extension of time for performance; it resulted in the nullification of the contract for sale.

■■ Sander also contends that the installation of the air conditioning system was tantamount to part performance of the contract and constituted consideration for the extension of the contract date. Yet, in fact, Sander did nothing more than he was already obligated to do under the sale contract. Furthermore, the air conditioning unit increased the fair market value of his property, which was reflected in the second FHA appraisal. There can be no consideration to Buyers where Sander receives the benefit and Buyers only receive that for which they had bargained. Sander's first and second points are denied.

Sander's third point focuses on an alleged procedural irregularity which he asserts requires reversal. Sander was found guilty of violating Regulation 4 C.S.R. 250–2.080(9) and § 339.105(2) without having been charged with those particular offenses in the complaint. He argues that he

---

1. Seller relies on an amendment to the contract which provides:

It is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise *unless* the seller

has delivered to the purchaser a written statement issued by the Federal Housing Commissioner setting forth the appraised value of the property ... which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller.... (Emphasis added.)

was apprised only of § 339.100 violations and addressed himself only to those issues in defending the charges against him. He contends that this lack of notice resulted in a denial of his constitutional right to due process.

An individual licensed as a broker can be subject to discipline only on the basis of grounds prescribed by statute. Procedural due process requires that the complaint specify the exact basis for any disciplinary action against the licensee. *Mueller v. Ruddy,* 617 S.W.2d at 475. The particularity of the complaint must be sufficient to enable the licensee to know the charges he must meet and to prepare his defense thereto. Because the Commission failed to charge Sander with violating § 339.105(2) and Regulation 4 C.S.R. 250–2.080(9), he was not sufficiently able to address those infractions. Subsequent disciplinary action based upon offenses with which he was not charged effectively denied Sander notice and his right to due process.

The error, however, does not mandate reversal. Section 339.100.3 states that a finding that "the licensee has performed or attempted to perform one or more of the foregoing acts shall be grounds for ... placing of the licensee on probation...." There was substantial evidence based on the whole record for the Hearing Commissioner to find that Sander had violated both §§ 339.100.2(1) and (3), as charged in the complaint. Violation of either of those provisions alone would have been sufficient to justify disciplinary action on the part of the Commission. The Hearing Commissioner's finding that Sander violated Regulation 4 C.S.R. 250–2.080(9) and § 339.105(2) was mere surplusage. Sander's third point is denied.

The judgment of the circuit court is affirmed.

SATZ and PUDLOWSKI, JJ., concur.