**In the Matter of the Real Estate Salesperson's License of Norma L. PERRON.**

No. C2–88–1782.

Court of Appeals of Minnesota.

March 21, 1989.

Richard T. Ince, Ince & Liszt, P.A., Minneapolis, for relator Perron.

Hubert H. Humphrey, III, Atty. Gen., Louis Hoffman, Sp. Asst. Atty. Gen., St. Paul.

Considered and decided by WOZNIAK, C.J., and LANSING and IRVINE,* JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

The Minnesota Department of Commerce commenced an action against relator Norma L. Perron, a licensed real estate person, alleging that during the sale of her private residence, Perron engaged in fraudulent, deceptive, and dishonest practices within the meaning of Minn.Stat. § 82.27, subd. 1(b) (1986); was untrustworthy, incompetent, and financially irresponsible in affairs under her real estate license within the meaning of Minn.Stat. § 82.27, subd. 1(f) (1986); and failed to deposit funds in her trust account as required by Minn.Stat. § 82.24 (1986).

While generally agreeing with the findings of the administrative law judge, the Deputy Commissioner of Commerce disagreed with his conclusions and recommendation and held that Perron's license should be suspended for six months.

On appeal by writ of certiorari, Perron argues that her conduct does not merit suspension because she acted outside the scope of her license. She also argues there is insufficient evidence to establish that her license should have been suspended. Finally, she contends that the case 'must be remanded to determine the penalty for her violation of section 82.24. We affirm.

## FACTS

From March 1981 to January 17, 1986, Norma L. Perron was a licensed real estate salesperson, and from January 17, 1986 to March 24, 1987, she was a licensed real estate broker. Since then, Perron has been a licensed real estate salesperson.

In October 1985, Perron agreed to purchase the Cassem home in Owatonna, Minnesota. That sale closed on December 12, 1985. Also in October 1985, Jerome and Myrtle Skalicky approached Perron to assist them in finding a home to purchase.

She showed them two homes. The Skalickys made offers on both homes, but each was rejected. She then showed them her own home. The Skalickys agreed to purchase her home on a contract for deed. This sale also closed on December 12, 1985.

Before the closing, a title opinion prepared by the Skalickys' attorney revealed that Perron's home was encumbered by three previously undisclosed mortgages. When confronted with the existence of the mortgages, Perron represented that the Skalickys' $430.02 monthly payments on the contract for deed would cover the monthly payments on the three mortgages. The payments on the three mortgages actually amounted to $714 a month, a fact not known by the Skalickys until later.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

She also told them that her real estate agency was doing well, that it would be no problem for her to make the mortgage payments, and that she would continue to make the mortgage payments. The Skalickys agreed to close the deal. In fact, Perron's business, Town and Country Real Estate, was not doing well. There had been a negative cash flow since Perron became the owner the previous September.

The Skalickys made all of their monthly payments to Perron through May 1986. At that time, they were informed that Perron had defaulted on the mortgages and would be filing bankruptcy. Foreclosure proceedings began on the Skalickys' home. They discontinued making payments and began to investigate the possibility of assuming the three mortgages. During their investigation, they learned the true amount of the monthly payments on the mortgages. At the administrative hearing, Myrtle Skalicky testified that she and her husband would not have purchased Perron's home if they had known either the true financial condition of her business or the true amount of monthly payments due on the three mortgages.

### ISSUES

1. Did relator's conduct amount to action taken under her real estate license?

2. If relator did not act under her license, could her license be suspended for conduct in the sale of private property?

3. Could relator's real estate license be suspended for any deceptive, fraudulent, or dishonest acts, even if they were unrelated to real estate activities?

4. Did the Commissioner properly suspend relator's real estate license?

5. Should the case be remanded for determination of a specific penalty for relator's violation of Minn.Stat. § 82.24?

### ANALYSIS

1. Minn.Stat. § 82.27 (1986) provides in pertinent part:

Subdivision 1. The commissioner may by order deny, suspend or revoke any license or may censure a licensee if the commissioner finds (1) that the order is in the public interest, and (2) that the applicant or licensee * * *:

* * * * * *

(b) has engaged in a fraudulent, deceptive or dishonest practice;

* * * * * *

or

(f) has, in the conduct of the licensee's affairs under the license, been shown to be incompetent, untrustworthy, or financially irresponsible.

Under the rules promulgated by the Department of Commerce, material misrepresentations constitute fraudulent, deceptive, or dishonest practices. Minn.R. 2805.2000, subpt. 1.I (1987).

The parties dispute whether Perron acted under her real estate license in her dealings with the Skalickys. Perron argues that because she was selling her private residence, she did not act under her real estate license. We disagree.

When the Skalickys first approached Perron to find a home for them to purchase, they approached her in her capacity as a real estate broker. She showed them two houses not owned by her, and they submitted offers on the houses. Only after the first two offers were rejected did Perron show the Skalickys her home. They then agreed to purchase it.

At the time she sold her house to the Skalickys, Perron was a licensed real estate salesperson. She had established a relationship with them in which she was not acting merely as a seller. When she initially showed them the first two houses and helped them submit offers, Perron acted as a real estate agent. She was attempting to find them housing. Under the facts presented, we cannot agree that merely because Perron eventually sold her home to the Skalickys, she did not act under her real estate license.

2. Minn.Stat. § 82.27, subd. 1(b) provides that a real estate license may be suspended or revoked for fraudulent, deceptive, or dishonest practices. The Commissioner argues that under the language

of subdivision 1(b), a licensee may be suspended for fraudulent, deceptive, or dishonest conduct in any real estate dealings, including the sale of the licensee's private property. We agree.

No Minnesota court has decided this question. Courts in other states, in construing similar statutory language, have held that a licensee may be suspended for dishonesty or incompetence in private real estate dealings. *See State Real Estate Commission v. Tice,* 200 Pa.Super. 553, 190 A.2d 188 (1963).

In *Tice,* the court held that a real estate broker could and should be punished for dishonest conduct in real estate activities in which he or she was involved as an owner. *Id.* at 559, 190 A.2d at 191. In particular, the court noted:

A broker who is dishonest or incompetent in the real estate activities in which he [or she] is involved as owner, is not likely to be honest or competent in his [or her] activities which are purely brokerage in nature.

*Id.* In view of the public protection purpose of real estate licensing, the *Tice* court found that a licensee could be punished for dishonesty or fraud in private real estate transactions. *Id.* We find the court's interpretation of the statute in *Tice* persuasive and believe that its adoption is warranted.

■ Notwithstanding our finding that Perron acted under her license, her actions herein also would have been subject to discipline in the sale of her private property pursuant to our interpretation of Minn. Stat. § 82.27, subd. 1(b).

Perron made several misrepresentations to the Skalickys in the course of her dealings with them. Her dishonesty in the course of private real estate activity makes it more likely she would be dishonest in real estate activities where she acted purely as a real estate agent.

In addition, as a real estate agent licensed by the State of Minnesota, Perron should be expected to conduct herself within the high standards of the real estate profession in *all* real estate related activities. *See also Maple Hill Farms, Inc. v.* *Division of New Jersey Real Estate Commission,* 67 N.J.Super. 223, 170 A.2d 461 (1961) (real estate person's personal interest in a piece of real estate is all the more reason to expect the high standards of the profession).

3. The Commissioner argues that the broad language of section 82.27, subd. 1(b) allows for suspension of a real estate licensee for *any* fraudulent, deceptive, or dishonest practices, even if wholly unrelated to real estate activities. In view of our disposition of the previous two issues, we decline to address the Commissioner's argument.

■ 4. An appellate court may reverse or modify an agency's decision if it is:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1986). *See also Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 827 (Minn.1977). Only when an agency decision reflects an error of law, is unsupported by substantial evidence, or is arbitrary and capricious will an appellate court reverse. *Crookston Cattle v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980).

Substantial evidence is:

[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Urban Council on Mobility v. Minnesota Department of Natural Resources,* 289 N.W.2d 729, 733 (Minn.1980) (citations omitted). Perron argues that her license was improperly suspended.

The Deputy Commissioner concluded there was substantial evidence to prove Perron engaged in activities deserving of suspension and that suspension was in the public's best interest. We agree.

The elements of fraud are: 1) a representation; 2) that is false; 3) having to do with a past or present fact; 4) that is material; 5) and susceptible of knowledge; 6) *known* to be false *or asserted* as of his [or her] own knowledge *without knowing its truth or falsity;* 7) made with an intent to induce the other person to act; 8) actual inducement; 9) action in reliance on the representation; 10) damage; and 11) causation. *Davis v. Re–Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967) (emphasis added).

After the Skalickys discovered the previously undisclosed mortgages, Perron misrepresented that their payments would cover the total monthly amount due on the mortgages. In addition, her real estate business had been operating with a negative cash flow ever since she had taken over as owner, but she represented that it was doing well. The materiality of her representations is clear. The Skalickys' title in the house depended on Perron's financial ability to make the payments on the three mortgages, especially since they could only afford $400 monthly payments, a fact known to Perron all along.

■ Perron asserts that there was not sufficient evidence to prove she intended to defraud the Skalickys. Without proof of an intent to defraud, she argues, the Deputy Commissioner could not conclude that she engaged in fraudulent, deceptive, or dishonest practices.

Intent to defraud is not necessarily an element of fraud. *Swanson v. Domning,* 251 Minn. 110, 115, 86 N.W.2d 716, 720 (1957). It makes no difference how a statement is made if it is made as an affirmation of the defendant's knowledge, and it is in fact untrue. *Id.* Moreover, assertions made as to a speaker's knowledge without the speaker really knowing the statement's truth or falsity are sufficient to show fraud. *Davis,* 276 Minn. at 117, 149 N.W. 2d at 39.

Perron's assertions that she could make the mortgage payments and that her business was doing well were assertions made as of her knowledge. Those statements misled the Skalickys and painted a false picture of Perron's financial condition, her business, and her ultimate ability to continue making payments on the three mortgages. Thus, even if Perron did not intend to defraud the Skalickys, her statements were fraudulent.

■ Perron also argues the Skalickys had a duty to investigate once they discovered the mortgages. Buyers have no duty to investigate a seller's representations and may thus rely on those representations. *City of Coon Rapids v. Suburban Engineering, Inc.,* 283 Minn. 151, 157, 167 N.W. 2d 493, 496 (1969). Perron's representations that the mortgage payments would be covered by the Skalickys' payments did not impose a duty upon them to investigate the veracity of her statement.

■ Finally, Perron contends that her rights to due process were violated because the Commissioner, who both issues the notice and order to show cause and reviews the ALJ's decision, has already determined there was a violation when he issues the order to show cause.

Minn.Stat. § 82.27, subd. 3 (1986) provides for a hearing on the Commissioner's charges, but agencies are not bound to a hearing examiner's findings and conclusions. *Moorhead v. Minnesota Public Utilities Commission,* 343 N.W.2d 843 (Minn.1984). If an agency significantly deviates from an examiner's findings, it should explain its reasons for doing so. *Mary Jo Beaty v. Minnesota Board of Teaching,* 354 N.W.2d 466, 472 (Minn.Ct. App.1984).

Perron received a hearing, and with the exception of a few minor changes, the Deputy Commissioner accepted the ALJ's findings of fact verbatim. The differences lie in the legal conclusions. The Commissioner properly exercised his power to modify the ALJ's conclusion and did not violate Perron's rights to due process.

■ 5. Perron argues that this court should remand her case for specification of the penalty imposed for her "technical" violation of section 82.24. The Deputy Commissioner's memorandum did not spe-

cifically assess a penalty for the violation; however, it does mention that in and of itself, violation of Minn.Stat. § 82.24 would require only a short suspension. Although we question whether any violation of section 82.24 is minor (the record is unclear), the Deputy Commissioner's language indicates that in determining whether Perron's license should be suspended, she considered the section 82.24 violation along with the other violations. In light of Perron's six-month suspension, we find it unnecessary to remand for determination of a suspension of specific duration for violation of section 82.24.

## DECISION

Relator's conduct in the sale of her private residence was incompetent and an untrustworthy action under her real estate license. Notwithstanding relator's actions under her license, the Commissioner of Commerce could have suspended relator for dishonesty in the sale of purely private property. Relator's suspension was supported by substantial evidence, and the case need not be remanded for determination of a specific penalty for relator's violation of section 82.24.

AFFIRMED.