**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 92-CC-01230-SCT**

*MISSISSIPPI REAL ESTATE COMMISSION*

*v.*

*RUBY HENNESSEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/92 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JOHN L. MAXEY, II |
| | LINDSAY C. PATTERSON |
| ATTORNEYS FOR APPELLEE: | RONALD G. PERESICH |
| | GINA L. BARDWELL |
| NATURE OF THE CASE: | CIVIL - STATE AGENCIES AND BOARDS |
| DISPOSITION: | REVERSED AND RENDERED - 4/11/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/2/96 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

**INTRODUCTION**

¶1. This case involves the reversal by the Hinds County Circuit Court of a Mississippi Real Estate Commission (hereinafter MREC) license suspension of Ruby Hennessee (hereinafter Ruby). The MREC ruled that Ruby had violated three licensing requirement sections during the sale of a home owned by her corporation and sold by her. The misrepresentations involved an undelivered termite certification for the home.

¶2. The MREC ruled that Ruby was subject to disciplinary actions for failing to deliver a termite inspection certificate as she had promised prior to the sale of the home. However, the circuit court found that "the record fails to reveal any substantial evidence that the appellant *as a realtor* made any representations that were misleading or false on the issue of termite inspection or certification" and reversed the MREC. (emphasis added). Accordingly, the MREC appealed the reversal and seeks to have the license suspension reinstated.

¶3. The issue on appeal is a first impression question of law in Mississippi as to whether or not a broker selling property wholly owned by the broker is subject to licensing disciplinary actions while doing so. The MREC argues that Ruby is subject to licensing disciplinary actions while selling property owned by her and that there was substantial evidence to support the suspension. Ruby argues the exact opposite, naturally. We find the MREC is correct, and therefore reverse the circuit court's ruling to reinstate the suspension properly imposed by the MREC.

## STATEMENT OF THE CASE

¶4. The procedural history of this case began on January 13, 1992 with the filing of a sworn complaint by Jimmy D. Davis (hereinafter Jimmy) and Sarah L. Scott (hereinafter Sarah) with the Mississippi Real Estate Commission against real estate broker Ruby Hennessee. Jimmy and Sarah's complaint was investigated by the MREC which conducted a hearing on April 14, 1992. The MREC heard testimony from David Griffith[1], Jimmy, and Sarah. Ruby made a brief closing statement to the MREC, but did not "testify" nor was she subjected to cross-examination. Ruby cross-examined Jimmy, but not Sarah. Upon hearing the aforementioned testimony, the MREC made the following ruling.

> Ms. Hennessee, the commission has considered the evidence and the exhibits and all the statements and has concluded that you're in violation of Mississippi Real Estate Brokers License Act 1954. Specifically, 73-35-21(a) (b) and (m). Our recommendation to you is that you comply with paragraph 13 on the Contract of Sale dated March 7th, 1991.[2] It's known as Exhibit 2 for the purpose of this hearing.
>
> Because of the above mentioned violations, we are suspending your license for a period of three months, followed by nine months probation. And we are dismissed.

¶5. Aggrieved by the MREC's ruling, Ruby appealed to the Hinds County Circuit Court with the Honorable William F. Coleman presiding.[3] After reviewing the April 14, 1992 disposition and proceedings with the MREC, and acting as an intermediate appellate court, Judge Coleman entered an Order and Opinion on October 27, 1992 reversing the decision of the MREC.

¶6. Judge Coleman's Order and Opinion addressed two issues. The first issue was whether the MREC had jurisdiction to investigate and conduct a hearing on the Complaint filed by Jimmy and Sarah against Ruby. He found that jurisdiction was proper because "[t]he Complaint charged several acts of misrepresentation that occurred during the negotiations for the sale. Thus, the Complaint and the evidence in the record were sufficient to give the Commission jurisdiction to investigate and conduct a hearing."

¶7. The second issue was whether or not there was substantial evidence to support the MREC's finding of the three violations by Ruby. As for this issue, Judge Coleman found that:

> At the conclusion of the hearing the Commission announced its findings that Appellant was in violation of §§ (a), (b), and (m) of its License Act of 1954 and further recommended "that you comply with paragraph 13 of the Contract of Sale". This paragraph provides that the seller furnish a certificate of termite inspection and provides for treatment at the seller's expense if active infestation is found.
>
> In its Order under "Findings of Fact" the Commission found "the purchaser, Davis, was told by respondent that she had a termite certificate" and "throughout the investigation, respondent states that

she would get a copy of the termite certificate but failed to forward one".

There is unrebutted proof by Appellant that her records on the property were destroyed by fire and further that she attempted to have the property inspected and any termite damage repaired but was prevented from doing so by the purchaser.

This Court is well aware that it must not substitute its judgment from that of the Board but a review of the record fails to reveal any substantial evidence that the Appellant *as a realtor* [4] made any representations that were misleading or false on the issue of termite inspection or certification.

*To the contrary the purchaser's statement indicates that they were well aware that Appellant was acting as the seller in any statement concerning termites.*

IT IS THEREFORE ORDERED that the Order dated April 22, 1992 be and is hereby reversed.

Dated, this the 27th day of October, 1992.

William F. Coleman

CIRCUIT COURT JUDGE

(emphasis added).

¶8. Aggrieved by the trial court's reversal of the Commission's three month license suspension with a nine month probation period for Ruby, the Commission appeals requesting review of two issues.

¶9. The issues according to the Commission are:

**I. WHETHER THE APPELLEE (RUBY HENNESSEE) WAS ACTING IN A CAPACITY SO AS TO BE SUBJECT TO DISCIPLINE BY THE MISSISSIPPI REAL ESTATE COMMISSION UNDER MISS. CODE ANN. SECTION 73-35-1.**

**II. WHETHER THERE IS SUFFICIENT EVIDENCE ADDUCED TO SUPPORT VIOLATIONS BY THE BROKER OF MISS. CODE ANN. SECTION 73-35-21(a)(b)(m).**

### STATEMENT OF THE FACTS

¶10. The facts of this case began on March 6, 1991 when Jimmy and Sarah made an offer of $35,000 on a home located at 1915 25th Avenue in Meridian, Mississippi. The owner of the home was Queen City Construction Company, Inc., a Mississippi corporation (hereinafter Queen). The President of Queen is Ruby. Ruby is also a realtor for Mississippi Real Estate Company (hereinafter Company).

¶11. Jimmy and Sarah deposited $500 as earnest money with Ruby as the realtor for the Company and paid $3,500 as the down payment on the property. The $500 earnest money was received by the Company through Ruby at her real estate office.[5] The property was owner financed by Queen at ten percent for fifteen years. Subsequently, the property was transferred by warranty deed on March 16, 1991. The Contract of Sale, paragraph No.9, indicates that the payment of a commission was not applicable.

¶12. The Contract for Sale reflects that Ruby signed the document in *three* capacities. She signed as the seller, the realtor, and as the listing agent. The closing statement reflects that Ruby signed the sale agreement

on behalf of Queen as the seller/president of Queen. The closing statement also reflects that the purchase price was adjusted down $1,000 to $34,000 and applied the $500 earnest money and $3,500 down payment towards the purchase leaving a balance of $30,000.00. The Company received $2,040 from the sale, although it is unclear for what exactly as the Contract of Sale, paragraph No.9, provides that the payment of a commission was not applicable. Thus, Ruby argues that she cannot be subject to discipline because she did not receive a commission from the sale and claims that the "figure could represent numerous other, non-commission, aspects of the transaction." However, she fails to give anything other than speculation as to for what the money received by the Company was intended. Rather, she espouses that it is "possible" that the money "could" be for something non-commission under this "interpretation."

¶13. Ruby cross-examined Jimmy during the hearing before the MREC and contended that the $1,000 reduction in sale price at the time of closing was so that Jimmy would accept the property "as-is". Jimmy answered Ruby's contention here by stating that this was not true and that even after the $1,000 reduction was made that Ruby still guaranteed that the home was free of termites, had a new roof and wiring, and was totally remodeled. The record reflects that Ruby did not pursue this rebuttal by Jimmy and instead began to try and illustrate that the cause for the termites was Jimmy's installation of a window air conditioner unit which released condensation and the installation of a concrete sidewalk beside the home trapping the water. However, Commissioner Linley, who previously served as a sales manager for Mississippi Termite Control, did not believe from his past experience that the existence of termites in Jimmy and Sarah's home was caused by the air conditioner and sidewalk as not enough time had elapsed for the termites to colonize.

¶14. As part of the Contract for Sale, paragraph No.13 provided that the seller would furnish the purchaser with a certification from a bonded and licensed firm showing that there were no visible signs of termite infestation. According to Jimmy and Sarah, Ruby told them prior to the sale that she had such certification. However, as Jimmy, Sarah, and David Griffith testified, Ruby never produced the certificate.

¶15. According to Ruby, the termite inspection certificate was destroyed by a fire which prevented her from producing the original and she was also unable to reproduce the certificate because she did not remember the company which did the inspection. *After* the complaint was filed against Ruby, she tried to get an inspector to check the home for termites. However, Jimmy and Sarah refused to allow Ruby's termite inspector to investigate, and hired two of their own termite investigators. The first investigator was an independent contractor, Hawthorn, who found termites burrowing out of the ground.[6] Jimmy and Sarah got a second opinion from Orkin which prepared a report indicating that the home did have possible hidden damage from termites.

¶16. The MREC hearing concluded with Ruby making a short apologetic statement to the effect that she was sorry that all of these problems had come up and that she had tried to please Jimmy and Sarah, but to no avail. The attorney for the MREC, John Maxey, concluded the hearing with his closing statement which was reproduced in Judge Coleman's subsequent reversal. Maxey's closing was as follows:

> Just in response to her [Ruby's] statement, I agree that we spent 55 minutes in the hearing, much of which has been directed at irrelevant statements. The issue here is the representation made at closing of whether or not there was a termite inspection and certificate of termite inspection and the two witnesses say that representation was made. The document indicates that it was required by the sale and there's testimony that no statement has been forthcoming and no evidence that any statement had ever been prepared.

Had it been destroyed in a fire, the thought would have been that it [sic] would have been some record of it at some location. And since that wasn't done and it's a material subject, then it would constitute misrepresentation under our statute. And I think all of the rest of the discussion has, perhaps, been people venting their frustration. But I don't think it's relevant to your consideration. Thank you.

¶17. Apparently, the MREC decided that Maxey's determination of the issues was the correct focal point of the inquiry as it subsequently suspended Ruby and recommended "that you [Ruby] comply with Paragraph 13 of the Contract of Sale." However, after reading Judge Coleman's reversal Order, it appears to this Court that he felt that Ruby was exempt from the licensing requirements because her company owned the property involved. Therefore, under Judge Coleman's interpretation of the statutes which are provided and discussed *infra*, a realtor in Mississippi cannot be subjected to disciplinary actions for acts committed while selling property wholly owned by the realtor him/herself. Accordingly, Judge Coleman's reasoning apparently means that a realtor is only capable of review by the MREC for acts committed during the course of selling property owned by another. This is not sensible logical reasoning as it ignores the legislature's intent.

## DISCUSSION OF ISSUES

### I. WHETHER THE APPELLEE (HENNESSEE) WAS ACTING IN A CAPACITY SO AS TO BE SUBJECT TO DISCIPLINE BY THE MISSISSIPPI REAL ESTATE COMMISSION UNDER MISS. CODE ANN. SECTION 73-35-1.

¶18. The standard of factual review for the trial court, acting as an intermediary appellate court, and ultimately this Court, for a decision by an administrative agency, such as the MREC, is familiar and well settled. "The only grounds for overturning administrative agency action by the appellate process is that the state agency has acted capriciously, unreasonably, arbitrarily; has abused its discretion or has violated a vested constitutional right of the party." *Melody Manor Convalescent Center v. Mississippi State Department of Health*, 546 So. 2d 972, 974 (Miss. 1989). In other words, as this Court noted long ago in *Mississippi State Tax Commission v. Mississippi-Alabama State Fair,* 222 So. 2d 664, 665 (Miss. 1969):

The Court will entertain the appeal to determine whether or not the Order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. This rule has been thoroughly settled in this state.

¶19. The aforementioned rule of law is used because this Court generally may not reweigh facts or substitute its judgement for that of the agency's. *Mississippi Comm'n. On Environmental Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1216 (Miss. 1993). Furthermore, the party challenging an administrative agency action has the burden of proof to rebut the rebuttable presumption afforded actions of an administrative agency. *County Board of Education of Alcorn County v. Parents and Custodians of Students at Renzi School Attendance Center,* 168 So. 2d 814, 818 (Miss. 1964); *See also Mississippi Comm'n. On Environmental Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993). Likewise, where there is substantial evidence supporting the agency's decision, this Court will not overturn an agency's decision. *Harris v. Miss. Real*

*Estate Comm'n*, 500 So. 2d 958, 962 (Miss. 1986). Therefore, Judge Coleman must have found, as must this Court to affirm his reversal, that the decision of the MREC was not entitled to the deference of validity generally afforded it by Mississippi jurisprudence. However, this Court finds that the real issue in this case is actually a new question of *law* which remains to be reviewed de novo by this Court, ***Bank of Mississippi v. Hollingsworth***, 609 So. 2d 422, 424 (Miss. 1992), even though an administrative appeal is limited in that this Court does not conduct a de novo review of the *facts*. ***Mississippi State of Nursing v. Wilson***, 624 So. 2d 485, 489 (Miss. 1993).[7]

¶20. The Contract for Sale reflects that Ruby signed the document in three capacities. She signed as the seller, the realtor, and as the listing agent for the Company. The closing statement reflects that Ruby signed the sale agreement on behalf of Queen as the seller. The closing statement also reflects that the purchase price was adjusted down $1,000 to $34,000 and applied the $500 earnest money and $3,500 down payment towards the purchase leaving a balance of $30,000. The Company received $2,040 from the sale. The MREC additionally argues that because the payment of the earnest money and the down payment occurred at Ruby's office, that this further implies that she was acting as a real estate agent.[8] Therefore, the MREC argues that because Ruby employed "her real estate license to earn a commission on property that she sells, she becomes subject to regulation by the Commission." Ruby contends, however, that she did not earn a commission and gives a grab-bag possibility explanation about for what the $2,040 going to the Company was intended.

¶21. In a nutshell, the following is the MREC's argument.

> The Commission submits that the Broker exploited her license to further her interests in this transaction. That is sufficient for the Commission to have power to take appropriate disciplinary action. This is amply demonstrated by the documents prepared by the Broker.[9]

¶22. The MREC argues that these documents illustrate that although Ruby, as President of Queen, was in fact selling her own property, that she acted as and was an agent for the Company for purposes of the transaction.[10] Therefore, the MREC contends that Ruby can not be excluded from being subject to the provisions of the Real Estate Act even though it was her own property.[11]

¶23. It appears that the basis for the trial court's reversal was that any act Ruby committed during the sale of the property to Jimmy and Sarah was done as the *seller* and *not* as a *realtor* subject to the Real Estate Act.

¶24. The relevant statutes read as follows.

> **§ 73-35-3. Definitions; applicability of chapter**.
>
> . . . .
>
> (5) Exempt from the licensing requirements of this chapter shall be any person, partnership, association or corporation, who, as a bona fide owner, shall perform any aforesaid act with reference to property owned by them, or to the regular employees thereof who are on a stated salary, where such acts are performed in the regular course of business.

Miss. Code Ann. § 73-35-3 (5) (Supp. 1994).

**§ 73-35-21. Grounds for refusing to issue or suspending or revoking license; hearing.**

The commission may, upon its own motion and shall upon the verified complaint in writing of any person, hold a hearing for the refusal of license or for the suspension or revocation of a license previously issued, or for such other action as the commission deems appropriate. The commission shall have full power to refuse a license for cause or to revoke or suspend a license where it has been obtained by false or fraudulent representation, or where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:

(A) Making any substantial misrepresentation in connection with a real estate transaction;

(B) Making any false promises of a character likely to influence, persuade or induce;

. . . .

(M) Any act or conduct, whether of the same or of a different character than hereinabove specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest fraudulent or improper dealing.

Miss. Code Ann. § 73-35-21 (Supp. 1994)

¶25. The precise issue in this case has yet to be decided by this jurisdiction creating a case of first impression for Mississippi.[12] Other jurisdictions have addressed this issue and have rejected Ruby's position.[13] *See Eckels v. Arkansas Real Estate Comm'n*, 783 S.W.2d 864, 868-9 (Ark.1990); *Arkansas Real Estate Comm'n v. Hale,* 674 S.W.2d 507, 509 (Ark. 1984); *Black v. Arkansas Real Estate Comm'n,* 626 S.W.2d 954, 957 (Ark. 1982); *In The Matter of Perron*, 437 N.W.2d 92, 94, 97 (Minn. 1989); *Canada v. Kearns*, 624 S.W.2d 755, 756 (Tex. 1981); *Virginia Real Estate Board v. Clay*, 384 S.E.2d 622, 625-26 (Va. 1989); *Real Estate Comm'n v. Tice,* 190 A.2d 188, 190-91 (Pa. 1963); *Wright v. Real Estate Comm'n*, 304 N.W.2d 39 (Neb. 1981). Therefore, the Court is presented with an opportunity to decide new law for Mississippi today. Under this Court's understanding of the dispute, the proper *Query* is: Is a licensed realtor subject to disciplinary actions by his state licensing commission for acts committed while selling property wholly owned by the realtor acting as the seller?

¶26. The MREC offers cases from other jurisdictions as persuasive authority for the proposition that similar statutes have been strictly construed holding the relator subject to disciplinary actions while selling his own property. *See Eckels v. Arkansas Real Estate Comm'n*, 783 S.W.2d 864, 868-9 (Ark.1990); *Arkansas Real Estate Comm'n v. Hale,* 674 S.W.2d 507, 509 (Ark. 1984); *Black v. Arkansas Real Estate Comm'n,* 626 S.W.2d 954, 957 (Ark. 1982); *In The Matter of Perron*, 437 N.W.2d 92, 94, 97 (Minn. 1989); *Canada v. Kearns*, 624 S.W.2d 755, 756 (Tex. 1981); *Virginia Real Estate Board v. Clay*, 384 S.E.2d 622, 625-26 (Va. 1989).

¶27. Most of the Arkansas cases, *Eckels*, *Hale*, and *Black*, dealt with the fact that a buyer of the misrepresented real estate had in one form or another relied upon the realtor as such, thus requiring the realtor to be bound by the state's disciplinary rules even though selling property owned individually by the realtor. Therefore, Ruby argues that because there is no evidence in the record that Jimmy and Sarah relied on her as a realtor, that the MREC's use of these authorities on this issue of first impression is inapplicable.[14] However, Ruby apparently disregards the other cases which come to the same conclusion as the Arkansas cases without necessarily requiring reliance by the buyer. *See, e.g., Virginia Real Estate*

***Board v. Clay***, 384 S.E.2d 622, 625-26 (Va. 1989); ***Sanders v. Missouri Real Estate Comm'n***, 710 S.W.2d 896, 899 (Mo.App. 1986); ***Canada v. Kearns***, 624 S.W.2d 755, 756 (Tex. 1981). Consequently, we find that reliance is not necessarily required. Accordingly, we find that Ruby was subject to disciplinary action by the MREC even though she was selling private property for herself.

¶28. Ruby also argues that because she did not receive a commission from the sale, that she sold the property as a private bona fide owner, and was thus not subject to the MREC disciplinary rules. The contract does reflect that no commission was paid. However, the closing statement lists the Company, Ruby's agency, as having received $2,040 for something.

¶29. An identical argument was rejected in ***Canada v. Kearns***, 624 S.W.2d 755, 756 (Tex. Ct. App. 1981), wherein the broker sold her personal home through her agency and yet did not receive a commission. The Mississippi statutes do not require that a "commission" be paid, just "valuable consideration." Miss. Code Ann. § 73-35-3(1). In this case, the documents reflect that the house was listed and sold through her agency. Therefore, this argument does not have merit either.

¶30. The purpose of the provisions regarding the qualifications for a real estate brokers license is to "safeguard the interests of the public." Miss. Code Ann. § 73-35-7. With such an important public policy in mind, if this Court were to uphold the trial court's reversal, we would be disregarding the overall purpose for which the act was intended. Miss. Code Ann. § 73-35-7. While it is undisputed that had Ruby not been a real estate agent, and merely sold her property privately, that the disciplinary rules of the MREC would have been inherently inapplicable, as one is not required to have a license for doing such that would be subject to MREC disciplinary proceedings. This is the type of exemption that the legislature intended. Miss. Code Ann. § 73-35-3 (5). However, such is not the case here.

¶31. To allow Ruby, or any other licensed real estate broker in Mississippi, to not be held responsible for misrepresentations made during the course of the sale of property wholly owned by the broker, while simultaneously holding that a broker will be held responsible for making misrepresentations during the sale of another's property, would create logically inconsistent results. As the Pennsylvania Court in ***Real Estate Comm'n v. Tice,*** 190 A.2d 188, 190-91 (Pa. 1963) reasoned, which was adopted in ***In The Matter of Perron***, 437 N.W.2d 92, 94 (Minn. 1989) by Minnesota:

> A broker who is dishonest or incompetent in the real estate activities in which he [or she] is involved as owner, is not likely to be honest or competent in his [or her] activities which are purely brokerage in nature.

¶32. Therefore, as reasoned by another Court over thirty-three years ago, and as adopted by yet another Court less than seven years ago, to permit dishonesty by a broker in their "private" lives, and yet condemn the same actions in their "public" lives, is to disregard the overall intent behind the legislation and not afford the general public the protection which the legislature has deemed worthy of protection. Accordingly, this Court finds that neither Ruby, nor any other real estate broker in Mississippi, shall be permitted to commit fraudulent misrepresentations in their private lives without disciplinary repercussions when they are not permitted to do the very same thing while representing another's property. Therefore, this case is reversed and rendered to prevent such an anomaly from occurring in this state.

## II. WHETHER THERE IS SUFFICIENT EVIDENCE ADDUCED TO SUPPORT VIOLATIONS BY THE BROKER OF MISS. CODE ANN. SECTION 73-35-21(a)(b)(m).

¶33. The MREC argues that there was substantial evidence to permit it to suspend Ruby's license. Naturally, Ruby argues that there was not.

¶34. The burden of proof placed upon the MREC to legally suspend Ruby's license is the familiar clear and convincing evidence standard. *Mississippi Real Estate Commission v. White*, 586 So. 2d 805, 808 (Miss. 1991). "On review however, the circuit court ha[s] no authority to intervene lest it finds the commission's decision was arbitrary and capricious, a standard we have equated with our familiar substantial evidence rule limiting our scope of review of court findings of evidence and ultimate facts." *Mississippi Real Estate Commission v. White*, 586 So. 2d 805, 808 (Miss. 1991), citing *Harris v. Mississippi Real Estate Commission*, 500 So. 2d 958, 962 (Miss. 1986); *Smith v. Sullivan*, 419 So.2d 184, 187-188 (Miss. 1982); *Mississippi Real Estate Commission v. Ryan,* 248 So. 2d 790, 793-94 (Miss. 1971). Therefore, in order for the Court to affirm the circuit court it must find that the decision of the MREC was arbitrary and capricious. We do not find this to be the case. Rather, we find that there was substantial evidence to support the MREC suspension which is reinstated.

¶35. Specific findings of fact are not reflected in the record from the MREC hearing. However, the trial court's opinion sets forth several findings of fact. Among those, which are supported by the record, are the following. Ruby "acted in this matter in at least two positions, as president and owner of the seller corporation and as realtor and listing agent. The sale contract [is] signed by Appellant as "Ruby Hennessee" in the spaces for "realtor" and "listing agent". The warranty deed was executed as grantor by Queen City Construction Company, Inc., Ruby Hennessee, President. The address shown on the warranty deed for grantor is the same as that of the Appellant as realtor." [(15)]

¶36. As for the issue of whether there was substantial evidence to support the commission's suspension, the following facts were set forth in the trial court's opinion and order. After restating the commission attorney's closing statements, the trial court emphasized the fact that the commission recommended that Ruby comply with paragraph 13, the termite certification clause, which was a clause of performance for the *seller, not the realtor*. The trial court further found that "the purchaser, Davis, was told by the respondent that she had a termite certificate" and "throughout the investigation, respondent states that she would get a copy of the termite certificate but failed to forward one." Then, the trial court took notice that "[t]here was unrebutted proof by Appellant that her records on the property were destroyed by fire and further that she attempted to have the property inspected and any termite damage repaired but was prevented from doing so by the purchaser." Finally, in making his decision, the trial court made the following ruling:

> This Court is well aware that it must not substitute its judgment from that of the board but a review of the record fails to reveal any substantial evidence that the appellant <u>as a realtor</u> made any representations that were misleading or false on the issue of termite inspection or certification. To the contrary the purchaser's statement indicates that they were well aware that Appellant was acting as the <u>seller</u> in any statement concerning termites.

¶37. The parties take exact opposite approaches to the ruling. The MREC argues that implicit within the trial court's ruling is that misrepresentations were in fact made by Ruby, just that the trial court thought that because she was acting as the seller, that Ruby was exempt from the disciplinary statutes. On the other hand, Ruby argues that implicit within the ruling is that the trial court found that there was no substantial evidence that any misrepresentations were made in her capacity as a realtor which, in conjunction with the evidence about the certificate being lost in the fire, would impliedly mean that the trial court did not find that

Ruby "misrepresented any fact regarding the termite certificate."

¶38. The Court finds that the evidence reveals that Ruby promised a termite certificate before the sale, promised one on the date of sale, did not deliver one within a reasonable time afterwards, had a fire, developed amnesia afterwards as to who did the certification, eventually never delivered the certificate, and did not offer to have the home inspected until after a complaint was filed against her with the MREC. With the above referenced findings in mind, which are all supported by the MREC hearing testimony and evidence, together with the determination that a realtor should not be exempt from disciplinary actions when selling private property, we find that there was substantial evidence in the record to support the suspension. Accordingly, this issue is completely without merit.

## CONCLUSION

¶39. The MREC's suspension is upheld and the trial court's reversal is reversed. The trial court erroneously interpreted the applicablity of the real estate licensing statutes. Furthermore, the suspension is supported by substantial evidence in the record making the MREC's decision neither arbitrary nor capricious. Accordingly, this case is reversed and rendered reinstating the MREC's suspension.

**¶40. REVERSED AND RENDERED REINSTATING THE MISSISSIPPI REAL ESTATE COMMISSION'S SUSPENSION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**

1. David Griffith is the chief investigator of the MREC who investigated the complaint filed by Jimmy and Sarah against Ruby.

2. Paragraph 13 of Exhibit No.2, **Contract For The Sale And Purchase Of Real Estate**, reads as follows: 13. **Termite Inspection**: Seller agrees to furnish Purchaser with certification from a bonded and licensed firm showing building has no visible evidence of active infestation. If active infestation is found, treatment will be at Seller's expense. Exhibit No.2.

3. Judge Coleman was supplied with briefs submitted by the parties, a copy of the MREC hearing transcript, and exhibit evidence, but apparently was not presented with any additional testimony, according to the contents of the record presented on appeal before this Court.

4. This italicized word and the subsequent italicized paragraph is added by the Court for emphasis. The underlines in the Order were made by the judge himself.

5. The MREC places emphasis on the fact that the transaction took place in Ruby's real estate office because other jurisdictions have used this factor in determining whether a real estate agent selling their own property is subject to discipline. ***Black v. Arkansas Real Estate Comm'n.***, 626 S.W.2d 954, 957 (Ark. 1982).

6. No written report was prepared by Hawthorn.

7. Compare ***Sigmen v. Arizona Department of Real Estate***, 819 P.2d 969 (Arizona 1991) ("Court of Appeals owes Department of Real Estate's conclusions of law no deference and may substitute its own conclusions with respect to disciplinary proceeding brought against real estate broker.")

8. The MREC places emphasis on the fact that the transaction took place in Ruby's real estate office because other jurisdictions have used this factor in determining whether a real estate agent selling their own property is subject to discipline. ***Black v. Arkansas Real Estate Comm'n.***, 626 S.W.2d 954, 957 (Ark. 1982). Notably, Arkansas has subsequently recognized in ***Eckels v. Arkansas Real Estate Comm'n.***, 783 S.W.2d 864, 868, (Ark. 1990) that "the fact that the transaction took place in the broker's office was merely evidence to be considered in determining whether the injured parties relied on the seller's status as a broker. That fact was not held to be a prerequisite to proving reliance."

9. The documents referred to are the Contract of Sale and the Closing Statement.

10. The Company received $2,040 on the sale.

11. Miss. Code Ann. Section 73-35-5(5) (Supp.1994) exempts bona fide owners selling their own property from licensing requirements of said chapter.

12. Judge Coleman's Order stated that, "Both Appellant and Appellee concede no authority existing on this issue of jurisdiction where the realtor was also the owner and corporate representative."

13. Ruby offers no persuasive or controlling authority to the contrary.

14. However, the Arkansas statutes did not have a reliance requirement just as the Mississippi statutes do not.

15. These findings of fact were used by the trial court in determining that it had jurisdiction of the matter.